United States Court of Appeals for the Ninth Circuit is now in session. Good morning. I'm Judge Gould and I'm presiding today. I'm delighted to be sitting with my colleagues Judge Tallman on my right and Judge Christin on the left. We have several witnesses. Judge Wiberg submitted all the briefs. U.S. v. Garcia submitted all the briefs. Bradford submitted all the briefs. And then Singh v. Bondy submitted all the briefs. And Trejo Campos v. Bondy submitted all the briefs. So, our first case for argument today. First case for argument is Randles. U.S. v. Randles. So, the appellant can proceed. This is set for 10 minutes per side. So, if appellant wants to make rebuttal argument, try to stop before you use up all 10 minutes. Thank you, Your Honor. Good morning. Miles Pope for Mr. Randles and I'll reserve three minutes for rebuttal. My plan is to make two quick points about the breach issue. And then, unless the court has a different preference, to focus on the restitution issues because they have more moving parts and will in all likelihood be relevant even in the event this court remands on breach. What's your strongest breach argument? Strongest breach argument is, first of all, with respect to breach itself, this was an express breach. The court asked a question, what would the government, what might the government recommend? Not an express breach, sir. The government only ever argued for the high end, 240. I think you have an argument about implied breach, but I don't see an express breach. The core of the breach argument, just on the facts, is that the government answered the court's question, I would recommend life. And that's what Ferraris-Contreras talks about, right? The sequencing. So, it is very meaningful that the judge asked the question. You wouldn't suggest that the AUSA was free to disregard the question? Ferraris-Contreras says that you cannot use the court's question as a guise for breaching the plea agreement. The question here was a conditional. Counsel, a guise? 18 U.S.C. section 3553A2 requires the court to fashion a sentence which is sufficient but not greater than necessary to comply with subparagraph A6, which is the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. What's wrong with the court asking the parties to talk about comparator cases and trying to fashion an appropriate sentence in this case? Well, I'm focused. So, that argument is a subsidiary argument that I raised, but the core of the breach here, and I will concede that I think if this court doesn't agree that saying affirmatively life in response to the court's question, I've got a much harder argument with respect to breach. I think you've got a difficult argument in the face of the statutory command, not to the government, but to the sentencing judge as to how the sentencing judge is to consider and apply the 3553A2 factor. But the prosecutor is governed by his own separate set of principles regarding what he can and cannot argue to the court, and if he promises to recommend 240 months. Just to answer the court's question, does your argument really come down to he should have prefaced it with, well, your honor, I am constrained by the terms of the plea agreement, but in answer to the court's question, my answer is, if not constrained by the plea agreement, I'd recommend life. My argument is the court asks, what might you recommend? And his response is, I would recommend life, even though he promised to recommend 240 months. What is your next argument? And I'm going to turn to restitution at this point. Okay. Actually, just, I mean, I understand your implied breach argument. Just, you know, I understand your implied breach argument would be premised on the life, the response life, and also to the string site, to a bunch of cases that were more severe. Is there, just quickly, is there more that I should be considering on that argument? Those two factors, the one additional thing that I would consider is that some of the inflammatory rhetoric, the rhetoric in the sentencing memo. Violent means sort of modern day slavery. I think informed by the response life. That's the core of my argument. Got it. Okay. Turning now to the restitution issues, and I'm going to begin with the back pay issue or the ill-gotten gains issue, and then turn to the $100,000 issue. In my view, the back pay issue turns on whether the plea agreement can serve as an alternative basis for the district court's plainly erroneous decision to rely. Why wouldn't it? Why isn't it? We're going to, after four hours contrarious, actually before four hours contrarious, we're going to treat that plea agreement as a contract, right? And you know that. And so why wouldn't it be the basis? Well, because the plea agreement didn't, he didn't, Mr. Randles didn't promise to pay back pay in the plea agreement. He promised to pay restitution, and the quid pro quo was that we're not going to pursue charges for even more violations that we could hit you with. Why is that improper as a matter of contract law? The government gave up something, he gave up something. But what he gave up is what's at issue with respect to the plea agreement itself. He stipulated that he owed restitution. He did, but he said specifically in the restitution provision, it says, you know, the parties agree pursuant to 18 U.S.C. section 2429, the court shall order, pursuant to 2429, the court shall order the full amount of losses incurred by the victims. Victims' losses under 2429 are not the same as back pay, and the government concedes that in its briefing. Well, the victim lost at least whatever the value was, although, frankly, I'm not sure how, what objective standard we apply to the value of her services, but clearly there was money that exchanged hands in return for her sex, and he took some or all of it, and why isn't that a loss of pay? It's not a loss of pay, it's not defined as a victim's loss under this court's precedence in interpreting analogous back pay provisions. So your strongest argument, that this contract shouldn't, should have given him an expectation right for performance of a contract, that should not have included ill-gotten gains, is what? The contract itself, so the contract itself says, just, it's just the plain text of the contract. It says the court shall order restitution for the full amount of the losses incurred by the victims. So, Mike, I appreciate that, and I've got that right here. So my question for you, sir, is given that that's the contract term that we're enforcing, what is it about that language that should cause me to decide that this would not have been an expectation? Full amount of her losses should not have included ill-gotten gains. Because under section 2429, as the government concedes, as it's answering brief pages 52 and 53, losses are distinct from ill-gotten gains. 2429 distinguishes between victims' losses and ill-gotten gains. It says there's victims' losses that you can be, you can But why wouldn't she be entitled to some or all of the, as I understand, there were two components to her pay. One was the, I joined the club, the club admission fee, right, $100,000, and the other is she was being compensated for each liaison. Why is that not two components of loss to the victim? I don't understand your argument. It's simply because this court has interpreted loss to not include back pay. Maybe we're not saying something that we should at the top of the decision tree. Aren't we going to review this for plain error? Yes, well, you'll review the issue for plain error, yes. And let me, I appreciate, I appreciate the court's implicit question. So the government asked below, the government relied on a statute that concedes plainly does not apply in seeking the back pay or the ill-gotten gains. It relied on the TDPA. It now, in its briefing, says that does not apply. The government flip-flopped in its briefing, I'll give you that. But the district court didn't. The district court's looking at the sentencing agreement, right? The play agreement, sorry. The district, so the district court in its comments on, so when the district court orders restitution, this is at 1 ER 46, it says the statutes regarding restitution in these unfortunate matters are clear, and those statutes are 2429 and 2259, 2259 actually does not apply here, which make it clear that the court shall order restitution. My view is that the district court, and why would it have relied on the plea agreement? Because the government urged it to rely on a statute. Relied on statutes did not apply the plea agreement. Did you say why would the government rely on the plea agreement? I appreciate the government made a different argument, but did, is that, is that what I just heard you say? Why would it, why would the court rely on the plea agreement? Well, we have to interpret that agreement as a contract. So how are we missing each other on this? Well, so I'm just, just looking, looking, well, I'll say two, two quick things. First, just looking at the record, when I see what the district court said with respect to why I am ordering restitution, it does not reference the plea agreement. It reference, it references statutes, just the statutes. Yes, I've got it right here. Yes. Yes. And so just reading that record. And your argument is that we've interpreted those statutes to cut your way, that there's this distinction. That's your argument. Correct. There's a distinction between backpaying. And your best plain error argument is what? So I have four plain error, I sort of have four plain error points. The first point that I would make with respect to plain error is, or obviousness, I think the court is going to be the obviousness prong on this one. What about prongs three and four? Because that's the, that's where it gets tough for you, prongs three and four. Manifest injustice, clear, clear error. So, so if it is, if the court agrees with me that losses do not encompass backpay, then it was illegal in this case for the district court to order restitution for backpay. You're focusing on, was it error? Was it plain? But Judge Trauman and I are trying to get you to focus on the last right, fairness and integrity, the proceedings manifest injustice. Could you look at those two factors? Why, why do those cut your way? For two reasons. First, well, first, the reason they cut my way is because if, you know, and this court has held this to be the case in previous sort of analogous cases that I cite in my brief. Cases applying plain error to, you know, ordering rest, applying the TDPA to a case where it does not apply. And also ordering restitution contrary to the ex post facto clause. If restitution is ordered that is, is illegal, this court has not hesitated in the past to say that that is prejudicial because the defendant has been required to pay restitution. He wasn't legally obligated. Those cases, in those cases, did any of the written agreements call for application of the incorrect statute, what you claim to be the incorrect statute? No, but I mean, from my perspective, that issue, the question of does this written agreement actually require the payment of ill-gotten gains under that statute? That would strike me as an issue for prongs one and prongs two. I understand your argument, and I think I've taken over your time. Okay, thank you. Thank you, counsel. For your planning purposes, you're out of time, but I'll give you a minute for rebuttal. Okay, thanks. And now we'll hear from Appellee, please.  Counsel, please proceed. Good morning, Your Honors. David Herzog on behalf of the United States. I was counsel below. May it please the court. The heart of a plea agreement is that both sides get what they bargained for and Judge Tolman hit it right on the head. The defendant got the ability to argue for a non-mandatory minimum sentence, right, 135, 135 months, rather than the charged mandatory 15 years. In exchange, the entire, perhaps not the entire, but a large portion of what the government was seeking was back pay restitution. And that's clear from the record, that if the government was not going to get back pay for this human trafficking victim that the defendant violently trafficked for years, he would have had to eat the 1591. He would have had to plead for the 15 years. One problem I have with that, forgive me for interrupting, is when you say, you know, we're looking at the record, I think you're arguing that we should be looking at some emails. Why would we do that? Yes, Your Honor. Even ignoring the emails, if the court sets the emails aside, the charge bargain itself makes it clear that 1591, that requires back pay under 1593, and has a 15-year mandatory minimum, was dismissed in favor of a charge with no mandatory minimum. Okay, so I don't need to look at the emails because I'm not going to look at the emails because I can't, they're not part of the record, right? So why would we do that? Your Honor, that's correct. Okay. All right. Thank you. Then with regard to the overall restitution losses versus back pay, my friend on the other side is correct that losses is therapy, essentially it's therapy bills. It's what the defendant herself would have paid out of pocket. Back pay or the ill-gotten gains, that is under the 1591 restitution statute, 1593, under that human trafficking statute, it's always been given to victims. Prior to the AHTA 2429, back pay was not available unless the person pled to the 1591 charge. So Congress fixed that, the same impulse the court has, which is how could she not get back pay? Congress fixed that, and that's what the defendant agreed to in the plea in exchange for getting away from the mandatory minimum. And the court is absolutely correct. It's paragraph nine of the plea agreement that says mandatory restitution under 2429. Could I ask you a question about the $100,000? Yes, Your Honor. I think the district court accepted, of course it has to be proof for all these losses, and the district court found victim M's testimony credible, he believed her, and he corrected the math, right? He corrected $6,000 a month for, I think, 33 months, which was consistent with her declaration or testimony. But at any rate, I don't have a question about that. When he asked, what is the evidence, he said, is there anything else, basically, I'm summarizing. Is there any other evidence in the record for that? And the government responded that there had been a ledger that was seized. I can't find the ledger. Was that in the record? No, it was not. It was produced in discovery. It was essentially a payo book. So did the district court have it? Your Honor, I don't think so. Okay. So the evidence that we have, that the district court had and that we have, is that victim M's testimony. And her sworn declaration, yes. Her testimony by declaration. Right. Okay. That was the answer to that question. So we looked everywhere. My law clerk definitely wants to know if she missed that. And I couldn't find it, and she couldn't find it, so you've made her day. You couldn't find it either. Yes, okay. Yes, that was referenced because it was in the discovery. But then, Your Honor, just to get to I think what the court's looking at right there is, what did the district court determine that lump sum based on? On the one hand, the court had the sworn declaration of the victim. Right. And the other hand, the court had nothing, right? The defendant put nothing up to compete against that. And as the court noted, did not take the opportunity to cross-examine her. So facing some evidence against no evidence, the court did not abuse its discretion in crediting the victim, who of course knew the value of her own body. She was the person who was trafficked. She was the person who the defendant was charging X amount of dollars per date over months into years. So I'd like to ask about your waiver argument. I don't see a valid waiver argument here. He had the right to appeal a restitution order, something that was over $20,000. This certainly was. I think you only get to waiver through the emails, which I've already pretty well signaled I'm not looking at. So is there, do you have another waiver argument? I would just ask the court to look at the word amount in paragraph 16, which is the appellate waiver. The defendant agrees that he may challenge the amount of restitution, not the application of the wrong statute. It's the amount. And that is the battle that we had in the district court over, is she credible? Should it be 300,000? Should it be 100,000? The amount. I would just submit to the court that under the contract principles that the court previously referenced, what is in the contract, what is in the plea under paragraph 16 is the defendant may appeal the amount, not the basis of the statute. So that's in your brief and I, and I'm only one of three, but I, I am not persuaded by that argument. Do you have another argument? No, that's our best waiver argument. Okay. So I didn't, I didn't miss it. All right. Thank you. But I, but I do think that based on the, the, the, the state of this record, what was before the district court was evidence that on which the court could rely without abusing its discretion. And he relied on, on victim M for the a hundred thousand dollars. He had documentary evidence of the loans and the bankruptcy filing fee. He corrected her testimony. She, she testified incorrectly, I think about the student loans and that was corrected, right? Yes, Your Honor. That's correct. So that's it. Yes. And I would submit to the court that, and the government submitted the, the Williams case at three ER three 33 here, which talks about in a trafficking case, it's going to be the evidence of the victim accounting for what happened, because this is by design a business in which no records are kept. And so I think the court was within its discretion to say, especially in a case where the defendant put up nothing that this victim's sworn testimony, this is my recollection of what I was trafficked for, for how long and what the rate of my body was that I think the court could act within its discretion to find that credible, especially when it was counteracted by nothing. I don't have any other questions. Fairly, Your Honor. If my then may address the breach issue has been raised. It sounds as though the court is hesitant to go with the breach. I think that's the right answer here with regard to the single statement. It was a life sentence. I just was an 11 C one C plea. Two 40 was the top of the range to the extent that judge Kristen is you're concerned about the implicit breach cases. All of those cases have a low-end promise, right? The breach in the, in, for, in Farias Contreras in Murray, the other cases, the government promises to recommend low-end and then in winks at the court to get higher. Right. And so that's his argument. His argument, this was a wink, right? That's his best argument, this was a wink because of the response to the question about life, right? And because of the string site to a bunch of cases where this, where the sentences were quite a bit longer. What's your response to that, please? Yep. To, to both of those, uh, to the, to the first, because this was an 11 C one C there was no possible breach because two 40 was the top of the range that wouldn't give the defendant the chance to withdraw, right? If the court had said, ah, the government said life, I should really sentence higher here. The court would have said, I'm going to sentence higher. And because it was an 11 C one C the defendant could then withdraw. So there's no way to get to the prejudice error of prejudice, part of plain error there with regard to the string citation, judge Talman, uh, articulated the government's position, which is the, the, the government, the court specifically said, I want comparator cases. Give me citations from other trafficking cases. The government has to be an ability to respond directly to the court. That's Maldonado. And I would also say Maldonado resolves, must the AOSA answer the court directly and candidly? The answer is yes. Yes, but it would be very different. And I'm not sure that I saw this acknowledgement in your briefing. Maybe you wouldn't have anticipated the question, but what Fry's contrast talks about when we, when we talk about sequencing, we said that we're going to look to sequence because it's a gestalt, right? We're looking at the transcript and we've said, we're going to look at the sequencing severity and purpose of the statements. So per judge Talman's point, you know, purposes, the government wants the high end of that, of that range for sure. But, but on this response to the question, I think that's life that the prosecutor would have recommended life. I think that's the point of the sequencing. So if the government had come in with a sentencing brief that had offered up, gee, but for, we would recommend life. I'd be looking at this with a, um, skeptically, very skeptically. It's quite different to answer a judge's question in court. I think your honor is exactly right. And the, and I, and I highlighted in my briefing that the government said two 40, 21 times across the briefing and at the hearing. And the reason why that's important is judge Gould's a concurrence in, uh, for his contours, which is you have to tether it, right? You have to tether the recommendation to something in here, but for the court asking a hypothetical counterfactual question, the government, right. What would you do if there were no plea, the government I can submit would have stuck with the recommendation that it made 21 times, which was two 40 consistent with All I'm trying to say is if, if the government had posed that hypothetical in its own brief, I would think that flavor is very different. I think the court's absolutely right. And I think that for us, I think the, the overall takeaway from the majority opinion for us and the first concurrence is that that's right. That the court had, the government has to act in good faith. And if I, sorry, I was council below. If the government had said, boy, judge the, the, the C one C is 135 to two 40, but this guy should get life. But for the plea agreement that my hands are bound by, if there'd been any indication of that in the briefing or what the government said prior to the court's interruption, I think the court would be exactly right. That could be construed as a version of breach. It's not implicit because of there's no low end promise, but I think the court would be right. But here that did not happen. I think the record is very clear that did not happen. The briefing and the everything else at the hearing said 21 times two 40 is the right sentence. And the last thing the prosecutor said was 240 sentences. The right at the parsimony principle is the sufficient, but not greater than necessary. And I emphatically urged the court to impose it emphatically. I don't know what else the government could do given that Maldonado required the government to answer the court's question directly. So I just have one final question. You're over time already. Friars Contreras was an en banc decision that was a very close call for our court. We did not, we were, I think quite overt about that because when we read that transcript, there was, we weren't so sure it was a hard, harder question. Is there anything we could do in this case, any reason to publish anything that you think is left, has left, uh, we've left murky on the breach question on the breach question. I don't think so because for Ria's Contreras said no plain error. And if that was not plain error, this doesn't, the, the, even the rhetoric in the brief, which to be fair, unlike for us had to cover the spread between one 35 and two 40. Um, I don't think there's a reason to publish this. And we also have case law that says that you can consent as a contractual term to the application of law as a quid pro quo for reduced charges. That's correct. That's in Ray Doe is that case. And then I would just submit on that final point, your honor, um, Rose versus Palmatier, I think gets to the heart of what the court saying, which is if you get a benefit and you negotiate for it, then you're held to it. Even if later appellate counsel says that's ex post facto. Um, and I think the, the best, my best cases on that are, uh, are obviously, uh, uh, uh, Rose versus Palmatier, Gilchrist and Navarro Botello. Okay. Counsel, thank you. You're two minutes over time now. So I, we should bring your argument to a close. Thank you, your honor. Okay. Thank you. And then we'll hear from my appellant. Um, so I said earlier, I'd give you a minute, your time was up, but I'll give you two minutes instead of a minute. Thank you for the windfall. I appreciate it. Um, so I wanted to flag two quick points on the back pay issue. First, uh, my friend conceded that back pay is distinct from losses. There is no agreement in this case about whether, uh, ordering back pay versus ordering losses is, is different. So that is something that I think the court it's important, but I'm still struggling with the two components because let's assume that she were in business for herself and she didn't have a pimp. Um, wouldn't she be entitled to it all? A hundred thousand club entry level fee and the cost per transaction. I, I, I'm just going to respond that under, under the law. Um, and, and my, my briefing goes into this, the way losses are defined, it is different from back pay losses as I, I just, I mean, it's ill gotten gains to the defendant. Clearly, uh, he doesn't have a right to keep that money because it, it's basically tainted money. And the question then I guess is, does it go to the government or does it go to the victim? But he didn't get to keep it. There's a four. So there's a, I think there's a forfeiture dimension, but, but in any, any event, I just wanted to emphasize that, that I think all sides in this case, and I understand the court's puzzlement and I, I heard the government's, um, you know, sort of, well, I just don't, I just don't see why it's not a component of the value of her services, I guess. It is, but it's not, it's not loss. It's not losses as losses are defined in federal restitution. Well, it's money that would otherwise have gone to her, but for the fact that the pimp took it. I don't know how else to describe it. I'm afraid I have nothing. I have nothing further for you, but just accepting that that distinction is, is in fact real. I do just want to emphasize that, you know, the language in this plea agreement is unambiguous. If there is a distinction between losses and back pay, it says, quote, pursuant to 2429, the court shall order restitution for the full amount of the losses. That is what Mr. Randall's agreed to in the plea agreement. It would, if, if, you know, an analogy would be if, if a plea agreement said pursuant to, you know, some, some of them. You have to convince us it's not recoverable pursuant to 2429. Correct. And I think we have your answer on that. But it's not, it's not recoverable pursuant to the 2429 doesn't apply to Mr. Randall. So it's not pursuant, recoverable pursuant to the plea agreement. I think we got it. Okay. Thank you. Thank you counsel. Thank you very much. The Randall's case will now be submitted and I thank both counsel for their spirited and excellent arguments. And so the case is now submitted.
judges: GOULD, TALLMAN, CHRISTEN